
# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-13-395

| | |
|---|---|
| TRICIA A. ARMSTRONG | **Opinion Delivered** October 23, 2013 |
| APPELLANT | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. F713233] |
| V. | |
| WAL-MART ASSOCIATES, INC., and CLAIMS MANAGEMENT, INC. | |
| | AFFIRMED |
| APPELLEES | |

## DAVID M. GLOVER, Judge

Appellant Tricia Armstrong was working for appellee Wal-Mart in its bakery freezer on December 24, 2006, when she was hit on her face and left shoulder by a twenty-pound box of frozen pies dropped by a co-worker standing on a ladder. Armstrong reported the injury on the next work day, December 26. Wal-Mart accepted a left rotator-cuff tear as a compensable injury and paid for rotator-cuff surgery in March 2007. Armstrong also claimed she suffered a neck injury in the same incident; Wal-Mart disputed this claim.

The administrative law judge (ALJ) determined that Armstrong had failed to prove by a preponderance of the evidence she suffered a compensable injury to her neck in December 2006—the ALJ found Armstrong had failed to submit objective medical findings that (1) connected her neck pain to the December 2006 injury or (2) supported her neck pain was related to her compensable rotator-cuff surgery. Because the ALJ found Armstrong's neck injury not to be compensable, the question of medical treatment was moot. The Workers'

SLIP OPINION

Compensation Commission affirmed and adopted the ALJ's opinion as its own. On appeal, Armstrong argues that substantial evidence supported the conclusion that she suffered a compensable neck injury on December 24, 2006, and that she is entitled to medical treatment for the neck injury. We affirm the Commission's decision.

When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission. *Flores v. Wal-Mart Distrib.*, 2012 Ark. App. 201. If the Commission's decision is supported by substantial evidence—evidence that a reasonable mind might accept as adequate to support the Commission's conclusion—this court must affirm. *Id.* The Commission's decision is reversed only if the appellate court is convinced that fair-minded persons could not have reached the same conclusion with the same facts before them. *Id.* Questions regarding the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Id.* When the Commission, as it did in this case, affirms and adopts the ALJ's findings, this court considers both the ALJ's and the Commission's opinions. *Id.*

Here, the ALJ noted that after Armstrong reported the injury, she was sent to the company doctor, whose initial diagnosis was trapezial muscle spasm and left-shoulder pain. In January 2007, Armstrong returned to the company doctor with complaints of trapezial muscle spasm, left-shoulder pain, and left rotator-cuff tendinitis. In February 2007, she again saw the company doctor, who found no acute distress, normal bilateral extremities, no spasm, no bony crepitance or instability of the shoulder, and full range of motion. An MRI

performed at the time indicated a left rotator-cuff tear, as well as a Chiari malformation.[1]

Thereafter, Armstrong underwent successful rotator-cuff surgery in March 2007.

The ALJ found Armstrong's shoulder injury had been accepted as compensable and that she had undergone rotator-cuff surgery. However, regarding Armstrong's neck complaints, the ALJ noted that they were related to the trapezius muscle and were mostly myofacial pain, which can occur with trauma or overuse; that the trapezius-muscle functions supported the shoulder and arm; and that Armstrong had also been diagnosed with a Chiari malformation. The ALJ explained that while there were objective medical findings presented, nothing in the medical evidence submitted connected the neck pain suffered by Armstrong to a neck injury in December 2006. The ALJ further stated that while Armstrong's neck pain might be associated with her rotator-cuff surgery, there were also no objective medical findings that would support that contention. These findings led the ALJ to determine that the greater weight of the evidence suggested that Armstrong's neck pain may be caused by the Chiari malformation.

The Commission's opinion adequately explains its decision and is supported by substantial evidence. Therefore, we affirm this case by memorandum opinion under subsections (a) and (b) of *In re Memorandum Opinions*, 16 Ark. App. 301, 700 S.W.2d 63 (1985).

Affirmed.
GLADWIN, C.J., and WHITEAKER, J., agree.
*Tolley & Brooks, P.A.*, by: *Evelyn E. Brooks*, for appellant.
*Bassett Law Firm LLP*, by: *Dale W. Brown*, for appellee.

---

[1]This is a condition in which brain tissue extends into the spinal canal and occurs when the skull is abnormally small or misshapen; this abnormality presses on the brain and forces it downward. Two symptoms of this condition are headaches and neck pain.