
# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–14–673

| | |
|---|---|
| | **Opinion Delivered** February 18, 2015 |
| NABHOLZ CONSTRUCTION CORPORATION and ST. PAUL TRAVELERS INSURANCE COMPANY <br><br> APPELLANTS | APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. E609910] |
| V. | |
| BRADLEY WHITE and DEATH AND PERMANENT DISABILITY TRUST FUND <br><br> APPELLEES | AFFIRMED |

**BRANDON J. HARRISON, Judge**

Nabholz Construction Corporation and St. Paul Travelers Insurance Company (collectively referred to as "Nabholz") appeal the Workers' Compensation Commission's decision to award Bradley White additional-medical benefits. Nabholz argues that (1) the Commission erred in holding that the statute of limitations did not bar White's claim for additional benefits, and (2) no substantial evidence exists to support an award of additional-medical benefits. We affirm the Commission's decision.

## I. *Facts*

In 1996, nineteen-year-old Bradley White fell thirty-five feet from a building on a Nabholz Construction worksite. White sustained low back and ankle injuries. Nabholz accepted these injuries as compensable and paid medical, indemnity, and permanent

anatomical-impairment benefits to White. In 1998, White filed an AR-C Form with the Workers' Compensation Commission. He checked every box on the form—including boxes for initial and additional benefits. Nabholz filed a closing report, an AR-4 Form, with the Commission in October 2000 and considered the case closed. In September 2004, White was in a significant car accident, an event that will be discussed in due course. From 2002 until 2007, Nabholz made no benefit payments. In 2006, White requested a hearing on permanent-partial disability, "further medical treatment," and a change of physician; in 2007, the Commission issued an opinion.

The Commission's 2007 opinion affirmed and adopted the ALJ's findings that, in 1998, White had filed his AR-C Form and therefore made a claim for additional-medical benefits within the two-year limitations period. The Commission also found that the AR-4 Form that Nabholz filed in 2000 had "no legal effect" against White's claim for additional benefits. But the Commission also stated that White had "merely requested a change of physician, rather than additional medical care. While [Nabholz's] argument may eventually be persuasive, should [White] seek additional medical care, it is no defense to his current request to change physicians and have the associated initial examination." White was therefore awarded a statutory one-time change of physician and an initial examination pursuant to Ark. Code Ann. § 11-9-514. Nabholz did not appeal the Commission's 2007 decision.

A change-of-physician order was entered in 2009, and White treated with Dr. Harold Chakales. In 2010, White requested a hearing for "payment of any outstanding medical," among other things. Following Dr. Chakales's death, White was awarded a

new change-of-physician order to Dr. Gil Johnston. Nabholz paid Dr. Johnston's bill. White was not heard on his 1998 claim for additional-medical benefits until October 2013, when the ALJ convened a hearing and then issued an opinion.

In June 2014, the Commission adopted the ALJ's opinion that stemmed from the October hearing and found that White's claim for additional-medical benefits, and Nabholz's statute-of-limitations defense, had not been adjudicated by the Commission in 2007. This means that the first hearing on White's claim for additional-medical benefits—and the related limitations defense—was held in October 2013. White testified briefly during the October 2013 hearing about his work history and the 2004 car accident.

The Commission also found that the applicable statute of limitations, Ark. Code Ann. § 11-9-702(b), did not time-bar White's additional-medical–benefits claim. The Commission reasoned that, because White had filed an AR-C Form with the "additional benefits" and "additional medical expenses" boxes checked, and the form was filed within two years of White's initial injury in June 1998, the statute's requirements were satisfied. In the Commission's view, the AR-C Form held open White's claim for additional benefits until the "claim was acted upon." The Commission concluded that, because White requested additional-medical treatment in the 1998 AR-C Form and that request was not previously decided or dismissed, White's claim was not barred by the statute.

## II. *Standard of Review*

In reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences in the light most favorable to the Commission's decision and affirm if it is supported by substantial evidence. *Smith v. City of Ft. Smith*, 84

 

Ark. App. 430, 143 S.W.3d 593 (2004). Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether this court might have reached a different result from the Commission. If reasonable minds could have reached the Commission's result, then we affirm. *Id.*

### III. *Statute-of-Limitations Issue*

We address the statute-of-limitations issue first. Nabholz argues that the statute time-bars White's claim because the last medical benefits paid in the case occurred in June 2002, and White waited more than eight years before acting again on his claim for additional treatment. Nabholz contends that it communicated to White that it considered the case closed when it filed a AR-4 Form with the Commission in October 2000. The Commission's holding, in Nabholz's view, renders the statute "meaningless" and arguably conflicts with our prior decisions in *Flores v. Walmart Distribution*, 2012 Ark. App. 201, and *Eskola v. Little Rock School District*, 93 Ark. App. 250, 218 S.W.3d 372 (2005).

The statute governing the time for filing claims for additional benefits is section 11-9-702(b):

(b) Time for Filing Additional Compensation.

> (1) In cases in which any compensation, including disability or medical, has been paid on account of injury, a claim for additional compensation shall be barred unless filed with the commission within one (1) year from the date of the last payment of compensation or two (2) years from the date of the injury, whichever is greater.

Our supreme court interpreted subsection 702(b) in *Plante v. Tyson Foods, Inc.*, 319 Ark. 126, 890 S.W.2d 253 (1994):

> It is well-settled that the furnishing of medical services constitutes "payment of compensation" within the meaning of the limitations statute and that such

payment of compensation or furnishing of medical services tolls the running of the time for filing a claim for additional compensation. The one-year limitations period begins to run from the last payment of compensation, which this court has held means from the date of the last furnishing of medical services.

319 Ark. at 129, 890 S.W.2d at 255 (citations omitted). The take-away from *Plante* is that although the statute contains no express tolling provision for an additional-medical benefits claim in particular, our supreme court has interpreted the statute to mean that the one-year limitations period may not begin to run until the last payment of compensation, which means from the date medical services were last provided.

Explaining why it found that the limitations statute was tolled when White filed his AR-C Form in 1998, the Commission wrote, "Arkansas Courts have long held that a timely filed claim for additional benefits tolls the statute of limitations until the claim is *acted upon*." (emphasis added.) The broadly stated statute-of-limitations question this case presents is: what is the legal effect of the 1998 AR-C Form? That question, however, raises narrower ones. Does that form's filing remove White's additional-medical benefits claim from the time-bar shadow because it was filed within two years of the date of White's compensable injury? Or did the form's filing only stop the limitations period from ticking until the claim is "acted upon"? There is a third option: White's filing of the 1998 AR-C Form could start a new limitations period running, the effect of which would be that his claim is barred because there are treatment "gaps" after the last payment of benefits was made in 2002.

The case law in general supports the notion that a timely claim for benefits stops the limitations period from running against it. In *Jones Truck Lines v. Pendergrass*, 90 Ark.

App. 402, 206 S.W.3d 272 (2005), for example, a claimant's 2003 claim for knee surgery was not time-barred although the compensable injury occurred more than thirty years earlier, in 1971. The claimant had filed a timely claim for additional benefits in 1974 and it remained open, but inactive, because the claim was neither decided nor dismissed. Our supreme court affirmed this principle in *VanWagner v. Wal-Mart Stores, Inc.*, 368 Ark. 606, 249 S.W.3d 123 (2007), recalling that the claimant's additional-benefits claim was not time-barred because: (1) a hearing was never held on the claim; (2) the claim was placed on inactive status; and (3) a final order was never entered on his case. *Id.* The bottom line appears to be that the critical inquiry for statute-of-limitations purposes is the date a claim is adjudicated. *Bledsoe v. Georgia-Pac. Corp.*, 12 Ark. App. 293, 675 S.W.2d 849 (1984). *But see Curtis v. Big Lots*, 2009 Ark. App. 292, at 6, 307 S.W.3d 37, 40 (noting that a dismissal pursuant to Ark. Code Ann. § 11-9-702(d) "has been ruled to 'untoll' the statute of limitation"). We therefore affirm the Commission's reasoning that White timely asserted his claim for additional benefits within the two-year limitations period in 1998 because the claim was neither dismissed nor decided until 2013.

Nabholz claims that our decisions in *Flores*, *supra*, and *Eskola*, *supra*, counsel us to reverse the Commission. In those cases, we affirmed the Commission's finding that the statute of limitations barred the claimants' benefits requests. Each case dealt with a request for additional-medical benefits, though the real issue in *Flores* was whether the timely filed claim for additional-medical benefits preserved a claim for permanent-disability benefits filed outside the one-year-limitations period. We held in *Flores* that a timely request for additional-medical benefits does not hold the statute open for an untimely request for

permanent-disability benefits. Because *Flores* did not address a potentially untimely additional-medical benefit claim, it does not control the limitations issue presented here.

*Eskola* presents a thornier question. Eskola was a high-school football coach who suffered a compensable shoulder injury in September 1998. After the injury, Eskola saw Dr. Richard Nix and received muscle relaxers, cortisone injections, and physical therapy. He did not file an AR-C Form until almost one year later, in June 1999. Eskola's AR-C form, like White's AR-C Form in this case, had every box on it checked—including boxes for both initial and additional benefits. But Eskola, unlike White, had not yet received any workers' compensation benefits when he filed his AR–C Form. Within months of filing his 1999 AR-C Form requesting benefits, Eskola was considered a candidate for shoulder surgery; he did not, however, choose to have the surgery until 2003. By that time, our court ruled, it was too late—the statute had run on Eskola's claim for additional benefits, including his request for shoulder surgery.

According to the Commission, the key distinction between this case and *Eskola* is factual. In *Eskola*, the "all checked" AR-C Form was treated as a claim for initial benefits. In this case, the "all checked" AR-C Form was treated as a claim for additional benefits. Acknowledging that *Eskola* gives us pause, we nonetheless affirm the Commission here. In doing so we rely on *Eskola*'s reasoning that "[a] claim request cannot be considered to be both an initial request for compensation and an additional request for benefits at the same time." 93 Ark. App. at 253, 218 S.W.3d at 374.

Whether a claim is an initial request for benefits, or a request for additional benefits, is a fact question that the Commission must first decide. Here, we defer to the

Commission's fact-based decision to characterize White's AR-C Form as a request for additional benefits. Unlike Eskola, White had been receiving medical, indemnity, and permanent anatomical-impairment benefits for nearly two years before he filed his AR-C Form. The Commission's determination that the form was a request for additional benefits is therefore supported by substantial evidence. So the reasons Eskola's additional-benefits claim was time-barred do not apply here.

Our determination that a timely filing of an AR-C claim for additional benefits suspends the statute of limitations is in tension with some prior dicta, most notably that expressed in *Petit Jean Air Serv. v. Wilson*, 251 Ark. 871, 874, 475 S.W.2d 531, 534 (1972) (filing a claim with the Commission is "by no means comparable to the lodging of a formal complaint in a court of law"). But our holding is nonetheless in line with our standard of review and recent caselaw that has addressed section 11-9-702(b).

IV. *Additional-Medical-Benefits Claim*

The Commission ruled that the record before it sufficiently supported White's claim for additional-medical benefits. Nabholz challenges that determination. Consequently, we ask whether substantial evidence exists to support an award of additional-medical benefits to White.

The Commission found that White had established, by a preponderance of the evidence, that additional-medical treatment provided by Dr. Johnston was reasonably necessary for treatment of his compensable back injury. (Recall that White received an initial examination with Dr. Johnston because Dr. Chakales had died). The Commission also found that Dr. Johnston's referral to a pain-management doctor was reasonable and

necessary medical treatment. The 2004 car wreck, the Commission determined, was not an independent intervening cause of White's need for additional treatment.

Nabholz argues that the Commission's decision is flawed because the record shows that it last paid medical benefits to White in June 2002, that one or more gaps in medical treatment continued until White was injured in an automobile accident in September 2004, and that it is not required to pay benefits for injuries caused by the car accident. In Nabholz's view, the Commission should have concluded that the car wreck was an independent intervening cause that relieved Nabholz of any obligation to pay additional-medical benefits to White.

Arkansas Code Annotated section 11-9-508(a) (Repl. 2012) requires an employer to promptly provide an injured worker medical treatment "as may be reasonably necessary in connection with the injury received by the employee." The employee must prove by a preponderance of the evidence that medical treatment is reasonable and necessary. *Wal-Mart Stores, Inc. v. Brown*, 82 Ark. App. 600, 120 S.W.3d 153 (2003). What constitutes reasonably necessary treatment is a question of fact the Commission decides. *Hamilton v. Gregory Trucking*, 90 Ark. App. 248, 205 S.W.3d 181 (2005). Medical treatment intended to reduce or enable an injured worker to cope with chronic pain attributable to a compensable injury may constitute reasonably necessary medical treatment. *LVL, Inc. v. Ragsdale*, 2011 Ark. App. 144, 381 S.W.3d 869; *see also Artex Hydrophonics, Inc. v. Pippin*, 8 Ark. App. 200, 649 S.W.2d 845 (1983) (holding that respondents remain liable for medical treatment reasonably necessary to maintain a claimant's condition even after the healing period ends).

Here, substantial evidence exists to support the Commission's findings that "additional follow-up care"—with White's treating physician, Dr. Johnston, and the management of prescription medication through a referral to a pain-management specialist—was reasonably necessary medical treatment. After White's 1996 fall, he received an open reduction and internal fixation for a left ankle fracture. He also had a lumbar fusion to stabilize a "burst fracture" he sustained in his low back. In 1997, a report from Dr. Anthony E. Russell noted a "significant loss" of paraspinous muscle and that White "could expect to have a significant pain" from the loss. Dr. Russell also "strongly recommended" that White consider some type of sedentary work because "[h]aving had this type of surgery at this young age, he is dooming himself to long term back problems if he does not eliminate the heavy physical labor." White was paid a lump sum for a 15% disability rating he received for his ankle and a 23% rating for his body. He also saw a pain specialist, Dr. Garlapati, in 2005. Dr. Garlapati diagnosed White with cervical radicular pain; left upper extremity; severe myofascial pain syndrome; bilateral neck and left shoulder; asymmetry of the left body that involves decreased left shoulder muscle mass and decreased range of left ankle movements; and a history of fusion at L4-5. A 2005 letter from Dr. J. Michael Calhoun stated that White "will require intermittent medications and physical therapy most likely for the remainder of his [life] in order to continue to be a productive citizen."

Dr. Chakales's reports from 2009 to 2011 show that he thought White had "some problems with persistent, chronic pain." Dr. Chakales's records also noted "degenerative traumatic arthritis of the ankle joint itself," degenerative disc disease (C4-5, C5-6) with

10

radicular symptoms, and he prescribed pain medicine, including opioid pain medicines. Dr. Johnston, to whom the Commission referred White after Dr. Chakales's death, wrote that White "certainly has much cumulative trauma . . . his injuries are well-documented and evaluation by pain management specialist will be helpful."

The record supports the Commission's finding that White is entitled to additional-medical treatment for his pain-related conditions.

Moving on to the second part of Nabholz's argument, according to Ark. Code Ann. § 11-9-102(4)(F)(iii), benefits "shall not be payable for a condition which results from a nonwork-related independent intervening cause following a compensable injury which causes or prolongs disability or need for treatment." Our supreme court interpreted this section in *Davis v. Old Dominion Freight Line, Inc.*, 341 Ark. 751, 20 S.W.3d 326 (2000), and held that the statutory amendment adding the language that an independent intervening cause does not require negligence or recklessness on the part of the claimant did not modify prior case law, but rather codified prior case law, including *Guidry v. J. & R. Eads Construction Co.*, 11 Ark. App. 219, 669 S.W.2d 483 (1984). In *Guidry*, this court stated that if there is a causal connection between a primary compensable injury and the subsequent disability, there is no independent intervening cause unless the subsequent disability is triggered by activity that is unreasonable under the circumstances.

Substantial evidence supports the Commission's conclusion that the 2004 car wreck was not an independent intervening cause of White's need for further medical treatment. White's conduct was not unreasonable in this case. He was never restricted from driving

SLIP OPINION

by any doctor. Nabholz contends that the injuries caused by White's car accident were not causally connected to his compensable injury, but there is contrary medical evidence. For example, White had a follow-up visit with Dr. Russell six months before the car accident. Dr. Russell noted that White's "major complaint today has been a recurring theme since the beginning. His left shoulder is causing quite a bit of trouble." White testified during the October 2013 hearing that he could "only do so much work" after he fell because the different jobs caused his pain level to increase the more he used his body. White also left his last regular employment outside the family businesses six months before the wreck occurred.

Nabholz claims that Dr. Johnston recommended a pain specialist without any knowledge of the injuries White suffered in the car accident and that White lacked employment after the car accident to support a contrary conclusion. But the issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we affirm its decision. *See Pafford Med. Billing Servs., Inc. v. Smith*, 2011 Ark. App. 180, 381 S.W.3d 921 (affirming Commission's conclusion that a car accident was not an independent intervening cause). Substantial evidence supports the Commission's decision that White's motor-vehicle accident was not an independent intervening cause that relieved Nabholz of further liability.

Affirmed.

ABRAMSON and GLOVER, JJ., agree.

*Friday, Eldredge & Clark, LLP*, by: *Guy Alton Wade* and *Phillip M. Brick, Jr.*, for appellants.

*Stanley Law Firm, P.A.*, by: *James W. Stanley*, for appellees.